Patrick M. Flatley
United States Bankruptcy Judge

Dated: Monday, September 12, 2016 3:38:32 PM

# IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:                              )
                                    )
WALTER FLINT                        )
 AND DONNA FLINT,                   )    Case No. 15-bk-0051
                                    )
              Debtors.              )    Chapter 7
                                    )
_____      )
                                    )
WALTER FLINT,                       )
                                    )
              Plaintiff,            )
                                    )
      v.                            )    Adversary No. 16-ap-0015
                                    )
WEST VIRGINIA STATE TAX             )
DEPARTMENT,                         )
                                    )
              Defendant.            )
_____      )

## MEMORANDUM OPINION

Walter Flint (the "Debtor") filed this adversary proceeding against the West Virginia State Tax Department ("WV Tax") alleging violations of the Bankruptcy Code's discharge injunction set forth in 11 U.S.C. § 524(a)(2) and seeking damages stemming from that alleged violation.

The Defendant seeks summary judgment in its favor because it asserts that the Plaintiff failed to satisfy his burden by clear and convincing evidence that the Defendant's actions amount to a violation of the discharge injunction. It also alleges that the discharge injunction is enforceable through contempt proceedings such that damages are not appropriate. In response, the Plaintiff argues that it has satisfied its burden and requests that the court enter summary judgment in his favor.

1

For the reasons stated herein, the court will grant summary judgment to the Plaintiff and deny summary judgment to the Defendant.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 248 (1986).

The movant bears the burden of proof to establish that there is no genuine dispute of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). Showing an absence of any genuine dispute as to any material fact satisfies this burden. *Id.* at 323. Material facts are those necessary to establish the elements of the cause of action. *Anderson*, 477 U.S. at 248. Thus, the existence of a factual dispute is material—thereby precluding summary judgment—only if the disputed fact is determinative of the outcome under applicable law. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). "Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party satisfies this burden, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Celotex Corp.*, 477 U.S. at 322-23. The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw*, 13 F.3d at 798. However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Anderson*, 477 U.S. at 249-50. Nor should the court make credibility determinations. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317.

## II. BACKGROUND

The material facts in this case are undisputed. On January 23, 2015, the Plaintiff filed a joint petition for bankruptcy protection, along with Donna Flint. On Schedule E, he listed personal

income tax debt that he and his ex-spouse, Cynthia Murray, owed to the Defendant. On March 3, 2015, the Defendant filed Proof of Claim #13 asserting a secured claim of $33,122.25 for tax years 2002 to 2010 and an unsecured claim of $35,400 for tax years 2011 to 2013.[1] The Defendant later amended its proof of claim to reduce its unsecured claim to $9,983.75. The secured claim remained unchanged. On July 14, 2015, the Plaintiff and his spouse received their discharge. The Plaintiff's personal liability to WV Tax for tax years 2002 to 2010 were discharged at that time. On July 16, 2015, the Defendant was served with notice of the discharge. The Plaintiff's bankruptcy case closed on July 28, 2015.

On November 11, 2015, the Defendant mailed a Statement of Account (the "Statement") to the Plaintiff. The Statement provides

> The State of West Virginia hereby notifies you of tax, estimated taxes, interest and penalties due as stated on this notice. This is not a Notice of Assessment of Tax. Please refer to the reverse side of this notice for a further explanation of this liability. Payment must be made on or before the Pay By Date or additional penalties will continue to accrue.

The reverse side of the notice states the following

> In compliance with the provisions of W. Va. Code § 11-10-12, as amended, notice and certification are hereby given that the taxpayer(s) named on the reverse side is indebted to the West Virginia State Tax Department for accrued taxes, interest, additions to tax, and penalties as hereinafter set forth. The taxes, interest, additions to tax and penalties shown on the reverse side of this notice are unpaid and constitute a lien upon all property of the taxpayer.

The Statement also includes a provision authorizing and commanding officers of the State of West Virginia to levy upon as much property of the taxpayer as possible, up to the amount of the outstanding debt. Additionally, the Statement includes a payment voucher and payment instructions. The Statement is entirely devoid of references to the Plaintiff's bankruptcy discharge. In response to the first Statement, the Plaintiff contacted his attorney, who in turn contacted the Defendant. WV Tax indicated that the Statements are not bills, but rather statements that liens exist against the Plaintiff and that the Statements would continue to be issued. In fact, the Defendant issued a second Statement, identical to the first but for an increase in the amount due, after the initial discussion between the Defendant and the Plaintiff's counsel. In response, the

---

[1] There is no dispute between the parties that the Defendant's secured claim is secured by all of the property owned by the Debtor as of the filing of the bankruptcy petition based on the validly recorded tax lien. The Debtor does not and did not own any real property.

3

Plaintiff requested that the court reopen his bankruptcy case, which the court reopened on February 12, 2016, and he filed this adversary proceeding against the Defendant.

### III. DISCUSSION

The Plaintiff asserts that the Defendant violated the discharge injunction by sending two Statements to the Plaintiff relating to taxes discharged through the Plaintiff's bankruptcy proceeding. The Defendant alleges that the Statements do not violate the discharge injunction as they are merely informational. The Defendant further asserts that sanctions are not proper in this case as the discharge injunction is enforceable only through finding one who violates it to be in civil contempt.

A. Violation of the Discharge Injunction

A Chapter 7 discharge under 11 U.S.C. § 727(a) discharges a debtor from all pre-petition claims, except certain categories of claims deemed excepted from discharge. Section 524(a) of the Bankruptcy Code implements the Chapter 7 discharge and operates as an injunction that prevents, among other things, the "continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." § 524(a)(2).

No private right of action exists for a creditor's violation of the discharge injunction. *E.g., Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 510 (9th Cir. 2002) (holding that Congress did not intend to create a private right of action under § 524 and that such a private right of action should not be inferred); *Johnston v. Telecheck Servs. (In re Johnston),* 362 B.R. 730, 739 (Bankr. N.D.W. Va. 2007) ("No evidence is present in § 524's legislative history to indicate the Congress intended to provide debtors with a private right of action."). Rather, a violation of the discharge injunction is punished by contempt of court. *E.g., ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.),* 450 F.3d 996, 1007 (9th Cir. 2005) ("A party who knowingly violates the discharge injunction can be held in contempt . . . ."). Civil contempt for a discharge injunction violation requires a willful violation. *Almond v. Ford Motor Credit Co. (In re Almond),* Case No. 06-6089W, 2007 Bankr. LEXIS 1595, at *18 (Bankr. M.D.N.C. May 7, 2007). "Determining if a party has committed civil contempt involves essentially only consideration of whether the party knew about a lawful order and whether he complied with it." *Burd v. Walters (In re Walters),* 868 F.2d 665, 670 (4th Cir. 1989); *see In re Dendy,* 396 B.R. 171, 178 (Bankr. D.S.C. 2008) (stating that willfulness in the § 524 context is "proved by showing that the creditors knew that the discharge injunction was invoked and intended the act which violated the injunction."). Moreover, the state

of mind of the party at the time the party violates the court's order is irrelevant as to a finding of contempt. *In re Cherry,* 247 B.R. 176, 187 (Bankr.E.D.Va.2000) ("In a civil contempt proceeding, the state of mind with which the contemnor violated a court order is irrelevant and therefore good faith, or the absence of intent to violate the order, is no defense."). The elements of contempt must be shown by clear and convincing evidence. *Ashcraft v. Conoco, Inc.,* 218 F.3d 288, 301 (4th Cir. 2000).

There is no dispute here regarding the validity of the court's discharge order on July 14, 2015, or whether the Plaintiff's personal liability to the Defendant was discharged by that order. Furthermore, there is no dispute that the Defendant received notice of the Plaintiff's discharge on July 16, 2015. Thus, the only question before the court in determining whether there has been a willful violation of the discharge injunction by the Defendant is whether the statements constitute an attempt to collect the discharged debt.

When a debtor receives a bankruptcy discharge under 11 U.S.C. § 524, the entry of that discharge voids any personal liability that the debtor may have for secured debts, and it prohibits any action or act to collect, recover, or offset any such debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(1-2). Any communication intended to advance collection of a personal debt, including the issuance of letters, or telephonic or personal communication, is included within the injunction. *See Burke v. State of Georgia*, 200 B.R. 282, 288 (Bankr. S.D. Ga. 1996) (finding that letters from the Georgia Department of Revenue demanding payment of prepetition taxes discharged in the debtor's bankruptcy case violated the discharge injunction); *Pague v. Harshman*, No. 3:09-ap-0071, 2010 WL 1416120, at *5 (Bankr. N.D.W. Va. April 5, 2010) (including post-discharge collection calls among the actions taken by a creditor in violation of § 524(a)(2)). However, only a debtor's personal liability on a pre-petition debt or lien is extinguished; a creditor's right to proceed against property of a discharged debtor survives giving rise to the adage that "liens pass through bankruptcy unaffected." *E.g. Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action *in rem*."); *Cen-Pop Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995) ("[L]iens pass through bankruptcy unaffected. A bankruptcy discharge extinguishes only *in personam* claims against the debtor(s), but generally has no effect on an *in rem* claim against the debtor's property.").

Importantly, a discharge in bankruptcy does not extinguish debt—the debt is still in existence—only the debtor's personal liability for the payment of that debt is discharged by the Bankruptcy Code. *E.g., United States v. Alfano*, 34 F. Supp. 2d 827, 841 (E.D.N.Y. 1999) ("Part of the conceptual difficulty may arise from the interplay between a discharge of the debtor's debt and an extinguishment of the creditor's claim. The key point is that although a debtor's debt may be personally discharged in bankruptcy, the underlying debt is not extinguished."); *Pague*, 2010 WL 141620 (holding that the creditor was allowed to enforce her lien *in rem* after discharge, but could not pursue the debtor personally on the discharged debt).

Although lien creditors are permitted to enforce their liens post-discharge, the injunction set forth in § 524(a)(2) still applies insofar as the creditor seeks to collect on any personal liability; therefore, though "it is not *per se* improper for [a] secured creditor to contact a debtor to send payment coupons, determine whether payments will be made on the secured debt, or inform the debtor of a possible . . . repossession," the communication must clearly indicate that "the creditor is not attempting to collect the debt as a personal liability." *In re Culpepper*, 481 B.R. 650, 658 (Banrk. D. Or. 2012) (*citing* 4 Collier on Bankruptcy ¶ 524.02[2][b]); *In re Brown*, 481 B.R. 351, 358 (Bankr. W.D. Pa. 2012) ("while [the lender] has the right to enforce its mortgage against the Property after discharge it has no right to demand payment from the debtor on the discharged debt.").

In instances where creditors send statements or other mailings to debtors, courts look closely at the content of the statement in light of the individualized facts of the case. *Mele v. Bank of America Home Loans (In re Mele)*, 486 B.R. 546, 555 (Bankr. N.D. Ga. 2013). Among the factors courts generally consider are (1) whether the communication contains a disclaimer that the communication is not an attempt to collect a discharged debt; (2) whether the communication serves a clear purpose other than to collect a discharged debt like providing a debtor with information, offering opportunities to negotiate, or responding to inquiries of the debtor; (3) whether the communication includes words of collection such as "demand" or "loan" or include a payoff amount, payment due date, references to late charges, or payment coupons; (4) whether communications are frequent and relentless; and (5) whether there is a regulatory or public policy justification for the communication. *See e.g. Brown*, 481 B.R. at 358-61 (finding mortgage statements sent to a debtor by a secured creditor post-discharge violated § 524(a)(2) when the statements provided an amount due and due date, referenced a late charge, and failed to include a

disclaimer informing the debtor that the statements were not an attempt to collect debt or referencing bankruptcy.); *Mele*, 486 B.R. at 555-58 (distinguishing the facts of that case from *Brown*, as the notices sent to the debtor included a disclaimer that the bank was not seeking to collect a debt, referenced the discharge of personal liability, and served the regulatory and public policy purpose of informing the debtor what was necessary to avoid foreclosure, despite including payment information); *Lovegrove v. Ocwen Loan Servicing, LLC*, No. 7:14-cv-0329, 2015 WL 5042913, at *12 (4th Cir. Aug. 26, 2015) (finding a notice that provides a total amount due was not sent with intent to collect a debt when the document provided a disclaimer, it fulfilled a regulatory purpose, and it provided the debtor with instructions on how to dispute the lien).

The first factor clearly weighs in favor of the Plaintiff. The Statements issued by the Defendant make no mention of the Plaintiff's bankruptcy discharge, nor is there any other form of disclaimer suggesting that the notice is not an attempt to collect a debt. The Defendant argues that such a disclaimer is included because the Statement includes a claim that the Statement is not a notice of tax liability. However, after a close examination of the Statements themselves, this assertion is incorrect; the Statements provide that they are not notices of assessment of taxes. The fact that the Statement is not a notice of a tax assessment is of no moment. There is nothing in the Statements to disclaim any attempt to collect a discharged debt.

The second factor weighs in favor of the Defendant. The Statements do appear to serve purposes beyond efforts to collect debts owed to the Defendant. Specifically, they relate to a lien held on the Plaintiff's personal property, they order officers of the State to levy upon the property of the Plaintiff in satisfaction of the taxes due, and they provide the Plaintiff with information regarding the lien on his property and how to contact the Defendant with questions. However, the third factor weighs heavily in favor of the Plaintiff. The Statements are rife with words of collection. They provide amounts due, payment coupons, due dates, and reference to penalties and interests for late payments. Particularly concerning is the sentence included within the Statements that "Payments *must* be made on or before the Pay By Date or additional *penalties* will continue to accrue." (emphasis added). The fourth factor also weighs in favor of the Plaintiff. Though only two Statements were issued prior to the initiation of this proceeding, the Defendant informed the Plaintiff that it would continue to issue Statements until the debt was satisfied. Moreover, the second Statement was issued after the Plaintiff's counsel confronted the Defendant about the appropriateness of the Statements. In that regard, though limited in number, the

Statements can be characterized as relentless because, despite the admonition of Plaintiff's counsel, the Defendant clearly indicated by virtue of the second statement that it would not abate its activity.[2]

Finally, the fifth factor also weighs significantly in favor of the Plaintiff. There is little or no regulatory or public policy justification for the issuance of the statements that were rendered in this case. The State has the right to levy upon property of the Plaintiff independent of the issuance of such statements. W. Va. Code § 11-10-13(a)-(b). Moreover, consideration of the totality of the language used in the Statements overwhelmingly shows that they were primarily collection devices, not regulatory notices as might be associated with assessments.

Considering the totality of the circumstances here, particularly the lack of a disclaimer, the presence of language demanding payment, and the issuance of a second Statement after the Plaintiff confronted the Defendant about the propriety of the Statements, the court finds that the clear weight of the facts adduced show that the Statements were meant to induce repayment of a discharged debt. Thus, the Plaintiff has demonstrated by clear and convincing evidence that the Defendant violated the discharge injunction.

### B. Sanctions

Once a violation of the discharge injunction has been established, a bankruptcy court is empowered to impose remedial sanctions, and to ensure future compliance with the court's order of discharge. *In re Baker,* 390 B.R. 524, 531 (Bankr. D. Del. 2008); *In re Workman,* 392 B.R. 189, 195 (Bankr. D.S.C. 2007); *In re Latanowich,* 207 B.R. 326, 333 (Bankr. D. Mass. 1997). In effectuating such purpose, the court has broad discretion to fashion orders requiring, among other things, the contemnor to pay for costs associated with vindicating the court's order. *Workman,* 392 B.R. at 195.

The Plaintiff asserts that, as a result of the above discharge violations by the Defendant, he suffered damages including emotional distress and costs connected with protecting his interests.

An order for civil contempt may not award recovery to the plaintiff for emotional distress according to the prevailing law in the Fourth Circuit. *Walters,* 868 F.2d at 669–670 (vacating an award for emotional distress damages as a result of civil contempt); *In re Original Barefoot Floors of Am., Inc.,* 412 B.R. 769, 776 (Bankr. E.D. Va. 2008) (holding that in a civil contempt proceeding

---

[2] Relentless means "showing or promising no abatement of severity, intensity, strength, or pace." *Merriam-Webster's Collegiate Dictionary*, 1051 (11th ed. 2003).

8

"there is no authority to award damages for emotional distress"); *In re Bock,* 297 B.R. 22, 29 (Bankr. W.D.N.C. 2001) (same). Thus, although the Plaintiff asserts that he suffered emotional distress caused by the conduct of the Defendant, the court is compelled to deny relief in that regard.

Nonetheless, the Court is empowered to take other remedial actions. The court takes notice of the fact that the Plaintiff was forced to expend his time meeting with attorneys. Lost wages and travel expenses are recoverable in this instance. In that regard, the Plaintiff is entitled to a reasonable sum for lost time, travel, and other incidental expenses that were incurred by him in responding to the Defendants' unlawful collection activities, and in ultimately securing the benefit of his discharge. *In re Mickens,* 229 B.R. 114, 118–19 (Bankr. W.D. Va. 1999); *Latanowich,* 207 B.R. at 337. The Plaintiff's complaint also demands an award for attorneys fees and costs. Such a demand is permitted, to the extent that the attorneys fees are reasonable. *Pague,* 2010 WL 1416120, at *9. In order to reach a determination of the necessary award for lost time, travel, incidental expenses, attorneys fees, and costs, the court will hold a hearing on the matter.

## IV. CONCLUSION

For the above-stated reasons, the court concludes that the Defendant willfully violated the discharge injunction in this case. The court will enter a separate order pursuant to Fed. R. Bankr. P. 7058 granting the Plaintiff's motion for summary judgment, denying the Defendant's motion for summary judgment, declaring the acts of the Defendant to be in violation of the Bankruptcy Code, holding the Defendant in civil contempt, enjoining the Defendant from undertaking further efforts to collect debt, and setting a hearing on damages.